# FILED

2020 Mar-11 AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION



UNITED STATES OF AMERICA
      Plaintiff


      v.                              Case No. 2:14-cr-00329-KOB


TERRI MCGUIRE MOLLICA
      Defendant

---

## MOTION FOR COMPASSIONATE RELEASE

## PURSUANT TO TITLE 18 U.S.C. SECTION 3582(c)(1)(A)

## AS AMENDED BY THE FIRST STEP ACT OF 2018

---

COMES NOW, Terri McGuire Mollica, pro se defendant, currently incarcerated at the Satellite Prison Camp in Aliceville, Alabama, requesting that this Honorable Court grant her Compassionate Release pursuant to Title 18 U.S.C. section 3582(c)(1)(A), as amended by the First Step Act of 2018, Publication L. No. 115-391, section 306, 132 Stat. 5194, 5239. Defendant is asking that this court reduce her currently imposed sentence to time served and order her be released from Bureau of Prisons custody, pending supervised released conditions, in order to obtain needed medical treatment and take advantage of treatment opportunities afforded her through the Multi-District Level Class Action lawsuits related to her medical condition.

I.    Summary

Terri McGuire Mollica has been diagnosed with a potentially life-threatening medical situation, in that she had transabdominal mesh implanted that has caused an approximately 20 cm fibroid, weighing approximately 15 lbs., to develop in her uterus. Ms. Mollica has requested medical treatment for more than three years. The BoP and FCI Aliceville's indifference to her treatment constitute extraordinary and compelling reasons, and the section 3553(a) factors support a sentence reduction to time served.

II.   Procedural History

On 8/25/2019, after almost 36 months of not receiving any treatment, Mollica went to sick call and requested medical attention for the uterine fibroid and the mesh implant but was not seen by a provider. (see Exhibit A - 1)

On 10/30/2019, Mollica filed an Administrative Remedy Form 8.5 "Informal Resolution Form" citing "Lack of Access to Medical Care," which went directly to Health Services at the prison, requesting treatment within 30 days for the mesh implant and the fibroid. The response received stated that she would "be on the call-out" for sick call. (see Exhibit B-1)

On 12/04/2019, after not receiving any medical attention, Mollica filed an "Request for an Administrative Remedy" Form 9 citing "Lack of Access to Medical Care," which went directly to the Warden at the prison, again requesting treatment for mesh and fibroids, asking for treatment with 30 days. (see Exhibit B-2) A response was due from the prison on 1/01/2020 (see Exhibit B - 3) but as of this date, has not been received. Assistant Warden Thomas stated that it "was still under review," on 2/14/2020, which is now 70 days past the due date for a response (according to Federal Bureau of Prisons' Policies and Procedures section 542.18). (see Exhibit B - 4)

[Mollica has not been able to file the Administrative Remedy Form 10 at the Regional Level, due to the fact that the 9 has not been answered. Per Assistant Warden, the request is "still under review" even though the response is more than 70 days past due (see Exhibit B - 4).]

On 2/05/2020, Mollica filed a Request for Compassionate Release with the Warden. The 30-day period to answer expired on 3/06/2020. (see Exhibit C)

III.    Facts

September 2016, Defendant arrived at FCI Aliceville, where she was examined by then prison gynecologist Dr. Griffin and immediately diagnosed with severe anemia and a 8 cm size fibroid on her uterus.

On 5/04/2017, eights months after her arrival at the FCI, Mollica was taken to consult with an outside gynecologist (Dr. Ted Cox), who confirmed that the uterine fibroid had grown in size to "18-week uterus," (approximately 11 cm) and she was still suffering from anemia. (see Exhibit A -2)  Dr. Cox performed an endometrial biopsy to determine malignancy.  The results of that biopsy are not in Mollica's medical records.

On 3/13/2018, more than 10 months after the consultation with Dr. Cox, another ultrasound was performed on her uterus, at the FCI Aliceville medical office.  The results indicate the fibroid had grown in size to 13 cm and she now has two separate 5 cm cysts on her right ovary as well as a nabothian cyst on her cervix.  Dr. Griffin recommended that she "see an outside specialist." (see Exhibit A - 4)

In June 2019, a noticeable protrusion in the upper right abdomen occurred.

On 8/26, 2019, Mollica requested medical care for the pain and bleeding associated with the fibroid and cysts, and the mesh implant. (see Exhibit A - 1)  She has never seen by a provider.

On 11/25/2019, at an appointment to renew prescriptions, Mollica reiterated her concern regarding the fibroids and the excessive bleeding.  Nurse Practitioner requested an ultrasound on Mollica's uterus and an "outside consultation" on 11/25/2019.

On 12/18/2019, a third ultrasound was performed on her uterus, at the SPC Aliceville medical office.  Preliminary results from the technician indicate the fibroid has increased in size to approximately 20 cm and weighed approximately 15 lbs.  However, the medical records have not been made available at the time of this filing.

In January 2020, another protrusion in the lower, left pelvic area became visible.

As of the date of this filing and more than 42 months in BoP and FCI Aliceville custody, Mollica has received no medical treatment for the mesh implants, fibroids, cysts, or anemia.

IV. History

Ms. Mollica has been in either U.S. Marshal custody or Bureau of Prisons custody since May 2015. She has suffered from complications for the mesh implant including anemia (with associated difficulty in breathing), heavy uterine bleeding, pain, infections, and fevers.

The defendant's medical condition was immediately diagnosed by FCI Aliceville Prison gynecologist Dr. Griffin, upon defendant's arrival at Aliceville in September 2016, but in the 42 months of incarceration at the SPC/FCI, Mollica has never receive any substantial treatment. Although she was taken to consult with an outside specialist once (Dr. Ted Cox) approximately eight months after arrival at FCI Aliceville, Dr. Cox's recommendation that she see a urogynecological surgeon (specialist) and schedule a surgery was never addressed. Dr. Cox performed an endometrial biopsy to determine whether the mass was malignant at that visit, but FCI Aliceville never even bothered to obtain the results.

After more than 36 months of no treatment, Mollica requested medical care in August 2019, when it became obvious that the transabdominal mesh that had been implanted into her abdomen area was shifting and causing protrusions, pain, and excessive bleeding.

Even after Mollica completed BoP Administrative Remedies Forms 8.5 and 9, the FCI administration and medical staff have continued to ignore her medical issues, showing an total indifference to her medical needs, in violation of Mollica's Eighth Amendment rights.

## V. Mesh Implants

In March 2011, Mollica had transabdominal mesh implanted into her abdomen and pelvic area. Since her surgery, more than 75,000 persons have entered into multidistrict level class action lawsuits because of the complications associated with these mesh implants. The majority of the complaints are pain, bleeding, organ prolapse, urinary and bowel complications. It is unknown how many deaths have resulted from the implants.

In June 2011, approximately four months after Mollica's surgery, "the FDA issued a statement indication that serious complications associated with surgical mesh ... were not rare, and identifying mesh contraction (shrinkage) as associated with tightening and pain, as a previously unidentified risk (FDA Safety Communication)." Later in 2011, "the America College of Obstetricians and Gynecologists (AGOC) and the American Urogynecologic Society (AUGS) issued a Joint Committee Opinion noting increasing report of pain associated with mesh, caused by contraction, retraction, or shrinkage (ACOG/AUGS Joint Committee Opinion). It warned that some women would 'require surgical intervention' and that pain may be intractable." Aquino v. C.R. Bard, et al, 2019 U.S. Dist. LEXIS 159377, No. 18-cv-5291 (N.D. IL 9/19/2019)

By 2012, the United States Judicial Panel on Multi-district Litigation, pursuant to 28 U.S.C. section 1407, consolidated and transferred all federal pelvic mesh cases pending to the Honorable Joseph R. Goodwin in the United States District Court for the Southern District of West Virginia. There are currently more than 75,000 affected persons involved in this litigation. See pending litigation at:

America Medical Systems, Inc. Pelvic Repair (Support) System Product Liability Litigation MDL No. 2325;

Boston Scientific Corporation Pelvic Repair System Product Liability Litigation MDL No. 2326;

C.R. Bard, Inc. Pelvic Repair System Product Liability Litigation MDL No. 2187;

Coloplast Corp. Pelvis Repair system Product Liability Litigation MDL No. 2387;

Cook Medical Inc. Pelvic Repair System Product Liability Litigation MDL No. 2440;

Ethicon Inc. Pelvic System Product Liability Litigation MDL No. 2327;

Johnson & Johnson Pelvic Support Product Liability Litigation MDL No. 2327.

VI. Discussion

  a. Federal Correction Institute and Satellite Prison Camp, Aliceville, Alabama

FCI/SPC Aliceville is located in Pickens County, Alabama. The health services department is grossly inadequate to supply the medical needs of approximately 1500 female inmates, for example only having one medical doctor on staff; during the period from December 2018 - August 2019, the facility did not have any physicians on staff. The facility regularly relies on "emergency room" visits to the local hospital, Pickens County Community Hospital, which closed its doors on 3/06/2020. The closest hospitals are now located approximately 50 miles away.

  i. United States v. Angela Michelle Beck, 1:13-cr-186-6 U.S. Dist. LEXIS 108542 (Middle Dist. N.C. 6/28/2019) and Angela M. Beck v. Hugh Hurwitz (acting Director of the BoP) 380 F.Supp.3d 479 case No. 1:19-488 (M.D. N.C. 5/21/2019)

Angela Michelle. Beck, previously incarcerated at this same facility (SPC Aliceville) developed breast cancer in her left breast, which after a significant delay, a radical mastectomy had to be performed. The medical staff and administration at SPC Aliceville refused to send Ms. Beck out for follow-up treatment radiation and chemotherapy, as recommended by her oncologist. Ms. Beck then developed breast cancer in her right breast, which was never treated. The District Court for the Middle District of North Carolina issued a TRO compelling the BoP to take specific steps to provide urgent medical treatment to Ms. Beck for her cancer. The administration and staff at SPC Aliceville refused comply with the District Judge's orders. The District Court found that "the course of action by the prison system in responding to Ms. Beck's known breast cancer, punctuated by repeated delays in care, was grossly inadequate...[and] there is no medical justification," and the treatment received "indicates BoP is unlikely to meet its constitutional obligations in the future. As long as she stay in BoP custody, she faces a substantial likelihood of substandard medical care for her life-threatening disease." (United States v. Angela Michelle Beck)

The staff at SPC Aliceville were observed on two separate occasion providing erroneous information and falsifying records provided to the District Court. See U.S. v. Beck, where the court state the SPC Aliceville staff "has provided erroneous information about recent appointments to the court" and "... error of declaration of a BoP physician assistant who stated [Beck] had a surgery consultation scheduled ... which the court relied upon in crafting a TRO, but which turned out not the be true." (footnote 15)

Because of her lack of care, the United States District Court for the Middle District of North

Carolina, granted Ms. Beck's request for compassionate release based on her invasive cancer of BoP's history of indifference to her treatment, which constitute extraordinary and compelling reasons." (United States v. Angela Michelle Beck)

    ii. In addition to Ms. Beck's situation, there have been three deaths at the FCI/SPC Facility during the period 3/2018 - 5/2019:

    (a) A. Rose, died at the facility of heart failure, within 30 days of arrival, after repeatedly being denied medical care for her heart condition (3/2018);

    (b) H. Gerry, died in the waiting area of the health services office, of a heart attack after being denied medical care over a period of at least three months (3/2019);

    (c) D. Nelson, died of bone cancer after NEVER being given any type of treatment or seeing an outside specialist or given any type of pain medication (5/2019).

    ii. Ms. Mollica has a fibroid tumor in her uterus, which may or may not be malignant, that has steadily increased in size from 8 cm in September 2016, to over 20 cm in size at December 2019. The Bureau of Prisons and the Federal Correctional Institute in Aliceville, Alabama, have continued to ignore the recommendations from medical providers, including its own doctors, as well as the requests from Ms. Mollica for medical treatment. Their actions have shown a total indifference to her medical situation. She specifically requested medical service on 8/26/2019, filed an administrative complaint form 8.5, and filed an administrative complaint form 9 (which has never been answered). The Warden did not respond to Ms. Mollica's request for Compassionate Release, filed in February 2020.

    In Ms. Mollica's case, FCI/SPC Aliceville and the BoP has NEVER provided any treatment for her. The 42-month delay in medical care has resulted in the tumor nearly tripling in size and causing a progression of the shifting in the mesh implant. Delays in treatment clearly raise significant risk of additional and irreparable harm to Ms. Mollica. There is nothing in the medical records provided that indicate any treatments or consultations have been scheduled. The records do not provide any reasons for the delays in arranging prompt medical attention and there is no medical justification for the delays.

    It is highly unlikely that the fibroid tumor can be removed without removing the transabdominal mesh and, most likely, Mollica will have to have her uterus removed, if not have a total hysterectomy.

VII. Finding and Analysis

Ms. Mollica's motion for a sentence reduction is properly before this court. She first requested compassionate release through a letter to Warden Patricia V. Bradley, whose office received it on 2/05/2020. (see Exhibit C) The Warden acknowledged receipt of the package but did not act on her request.

a. Extraordinary and Compelling Reasons under 18 U.S.C. section 3582(c)(1)(i)

Ms. Mollica has received grossly inadequate treatment for her condition while serving her sentence in BoP custody. During the lengthy delays, her tumor has increased in size and has caused her mesh implants to push into the muscles in her abdomen and pelvic area, causing visible protrusions to her abdomen and pelvic areas. Absent judicial oversight, she is unlikely to receive better treatment at SPC/ FCI Aliceville going forward. She is in urgent need of appropriate treatment to prevent further damage and potential loss of her life. These are "extraordinary and compelling reasons" to reduce her sentence under section 3582(c)(A)(1).

FCI Aliceville and BoP's has disregarded both Dr. Griffin's and Dr. Cox's recommendations (see Exhibit A - 2) and did not attempt to obtain the results of the endometrial biopsy.

As evidenced by the 75,000 persons represented in the class action lawsuits, the damage from the product is widespread and has shown to cause serious health complications.

b. The Reduction is Consistent with the Sentencing Commission's Guidance

In evaluating compassionate release motions filed by defendant, the old policy statements do not bind the Court's interpretation of section 3582(c)(1)(A)(i). They indicate that medical conditions, alone or in conjunction with other factors, can constitute extraordinary and compelling reasons.

As discussed in the seven class-action lawsuits, failure to remove the surgical mesh is a potentially life-threatening condition, even after removal. That coupled with delayed medical treatment and surgery for the tumors has created an urgent situation. BoP's indifference to Ms. Mollica's treatment has likely

reached the level of a constitutional violation and is compromising her chance of survival. Her continued detention in BoP custody poses an unacceptable risk to her health and life and constitute an extraordinary and compelling circumstance under Subdivision D of the application note. (Setser v. Untied States, 566 U.S. 231, 242-43, S. Ct. 1463, 182 L.Ed.2d 455 (2012) noting that the pre-First Step Act compassionate release provision in section 3582(c)(1)(A) also provided a mechanism for a district court to grant relief when its "failure to anticipate developments that take place after...sentencing...produce unfairness to the defendant.") A sentence reduction is consistent with the substance of Subdivision D.

.

c. The section 3553(a) Factors and Dangerousness

Per Section 3553(a)(2)(D):

(a) Section 3553(a) factors are to be consider in imposing a sentence. The court, in determining the particular sentence to be imposed, shall consider -

(2) the need for the sentence imposed --

(D) to provide the defendant with needed ....medical care....in the most effective manner;

Ms. Mollica is a first-time offender and is currently being housed at a Prison Camp. Her custody level is "out custody" as determined by the Bureau of Prisons, indicating that she is not a danger.

The 3553(a) factors, taken as a whole favor release. Ms. Mollica has been in custody for almost five years and that is significant punishment, especially for someone who had never been incarcerated before. (United States v. Lenagh, No. 8:07cr346, 2009 U.S. Dist. LEXIS 9226, 2009 WL 296999 at *6 (D. Neb. 2/06/2009) "a sentence of 24 months is a significant sentence, especially to an offender who has never been incarcerated al all.")

She has served her entire sentence, including pre-trial detention of 15 months, with a serious health issues, and BoP has repeatedly mismanaged her care, including delaying medical appointments for so long that minimally invasive procedures will no longer be effective. "This means that [her] sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in [her] condition would be greater than necessary to serve the purposes of punishment set forth in section 3553(a)(2). (United States v. McGraw, No. 2:02-cr-00018-LJM-CMM, 2019 U.S. Dist. LEXIS 78370,, 2019 WL 2059488 at *5 (S.D. Ind. 5/09/2019) and supports a reduction in her sentence "to provide the defendant with needed...medical care...in the most effective manner." 18 U.S.C. section

3553(a)(2)(D). And, for the reasons noted, further incarceration is not needed to protect the public. 18 U.S.C. section 3553(a)(2)(C).

A reduction in Ms. Mollica's sentence to time served - approximately 60 months - is sufficient to serve the purposed of punishment under section 3553(a)(2). And, given her medical history and the poor treatment she has received at FCI Aliceville and BoP, a longer sentence would be grater than necessary to serve those purposes. As such, the applicable section 3553(a) factors support Ms. Mollica's request for compassionate release.

## VIII. Conclusion

Ms. Mollica has served approximately five years of her sentence, and all of them with serious medical issues related to a fibroid tumor, complicated by the implantation of abdominal mesh. The lack of medical treatment has significantly reduced the chances of a minimally invasive outcome and possibly even chances of survival. The abysmal health care FCI Aliceville and BoP has provided qualify as "extraordinary and compelling reasons" warranting a reduction in her sentence to time served.

The BoP has repeatedly and continuously for more than 42 months, delayed scheduling necessary and urgent procedures, testing, examinations, and evaluations by qualified specialist in contrast to recommended treatment by medical care specialists, risking the spread of her medical condition and endangering her life.

She has no ability to schedule medical appointments on her own nor would the prison allow her to leave the facility for medical appointment on her own. She is completely dependant on SPC/FCI Aliceville to arrange for her medical are and treatment. Mollica's condition, which has been diagnosed by two physicians, mandating treatment which upon diagnoses, it so obvious that even a lay person would recognize the necessity for a [Urogynecological] specialist's immediate and continue attention. There are currently no Urogynecologists located within 50 miles of SPC Aliceville.

There is a substantial likelihood that she has severe and urgent medical needs and that the SPC/FCI's failure to provide prompt and effective medical care constitute deliberate indifference in violation of their responsibility under the Eighth Amendment to the U.S. Constitution, and that the absence of immediate release by this Court, Ms. Mollica is likely to suffer irreparable harm in that further delays may result in

deterioration of her medical condition and/or death. The Middle District of North Carolina has already determined that "the indifference to [her] medical treatment" and that an "improper treatment schedule" for medical conditions [provided at the SPC/FCI Aliceville] constitute extraordinary and compelling reasons under section 3582 for compassionate release to be granted (see U.S. v. Beck).

Once released from BoP custody, Ms. Mollica will be able to purchase private health insurance, consult with Urogynecologist surgeons who specialize in complications for the transabdominal mesh, and take advantage of the opportunities afforded her through the class action lawsuits.

The defendant prays that this court to GRANT her motion for compassionate release, reduce her sentence to time served, and order her immediate release from Bureau of Prison custody.

Respectfully submitted, this the _____ 10th _____ day of March 2020.


Terri McGuire Mollica
c/o SPC Aliceville
P.O. Box 487
Aliceville, AL 35442

CERTIFICATE OF SERVICE

I, Terri McGuire Mollica, certify under penalty of perjury, that a true and correct

copy of the MOTION FOR COMPASSIONATE RELEASE PURSUANT TO TOTLE 18 U.S.C. SECTION

3582(c)(1)(A) and ATTACHMENTS A, B, AND C  Was mailed, via first-class  pre-paid postage, by

placing motion in the SPC Aliceville prison mailbox and mailed to the following address:

Hugo Black Courthouse, U.S. District Court, 1729 5th Ave N
Birmingham, AL  35203

Done, this the ___10th___ day of February 2020.

**Federal Correctional Institution**

**SPC Aliceville**

**Sick Call Request/Triage and Medication Refill Form**
Formulario para obtener una cita medica y para rellenar medicinas

**Do not place the sick call request in the institution mail.**
**Failure to complete this form or follow any procedure delays processing your sick call complaint.**
Llene este formulario completamente y traigalo al Servicio de Salud para ponerlo en la caja designada para sick call. No ponga este pedido para cita medica en el correo de la institucion. No seguiendo este procedimiento o llenando este formulario incompletamente, tardara su cita medica.

(PLEASE PRINT)

**NAME:** Terri Mollica _____ (Nombre) **REG. No.:** 31860-001 (Numero de Registro)

**Signature:** Terri Mollica _____ (Firma)     **UNIT:** D (Unidad)

**Today's Date:** 8/26/2019 (Fecha de Hoy)

**What is your medical problem?** (Cual es su problema medico?)
Ovarian/uterine pain & pressure.

**When did your problem begin or how long have you had the problem?** (Cuando comenzo su problema/ Cuanto tiempo ha tenido su problema?)
2016

**When were you last seen for your problem?** (Cuando fue la ultima vez que lo vieron por su problema?)
2018

**History of medical problems?** (Circle)     Diabetes (Hypertension) Cardiac Disease     Asthma
                                            Immunocompromised     Mental Health Problems

Por cuanto tiempo tiene este problema? (Circule uno) Diabetis   Hypertencion   Enfermedad Cardiaca  Astma
                                            Immunocomprometida     Enfermedad Mental

**Are you taking medicine?** (Circle one) (YES) NO  (Estas tomando medicina - Circule uno) (Si)     (No)

**Do you Need Refills?** (Circle one)     YES (NO) (Necesitas rellenar tus medicinas? )     (Si) (No)

If yes, what is the name(s) of the medication(s) you need refilled? _____

Cual es el nombre de las medicinas que necesita rellenar? _____

**Have you had an injury?** YES (NO)          If YES, do you have pain? (Circle one) (YES) NO
(Le ha lesionado?)   (Si) (No)   (Tienes dolor?)   (Circule Uno) (Si) (No)

If yes, how long have you had pain: 3 days  If YES, where is your pain? (Si contestas Si, donde estas su dolor?) _____
(Por cuanto tiempo?)                         abdomen, ovaries, uterus, bladder

**If yes, rate your pain (circle one)** 1   2   3   4   5   6   7  (8)  9   10
(Como quantifica su dolor (circule uno)(0- No pain, 1-2 Mild, 3-4 Discomfort, 5-6 Moderate, 7-8 Severe, 9-10 Worst pain possible)
(0- No dolor, 1-2 Poco dolor, 3-4 Leve dolor, 5-6 Dolor moderado, 7-8 Dolor severo, 9-10 Peor dolor)

All non-medical problem requests including copies of Medical Records should be sent by regular Cop-Out through the institutional mail system.
(Todos los problemas que no son de indole medicos, incluyendo copias de su record medico, seran dirigidos atravez de un Cop-Out y puesto en el correo de la institucion)

_____ **Do not write below this line** _____
(No escriba abajo de esta linea)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TO BE COMPLETED BY HEALTH SERVICES STAFF ONLY.**

Date Scheduled to be Seen: _____          HSU Staff Signature: _____

Health Care Provider Comments: _____
_____ 8/26/19 nm
* Knopp - said she will put in for another consultation.

Historian       Report                         MOLLICA, TERRI MCGUIRE - 6073

                                               *31860-001*

                                               **FCI Aliceville**

**GYN** Exam

Patient:  D      TERRI MCGUIRE     **MRN: 6073**     **FIN: 55893**
Age: 50 ea.      Male   DOB: 5/14/1966
Associated Di.   one
Author: Cox

Subjec        n
  Chis      ou
  UT !  ... do     (05/04/17 10:54 by Weatherly, Brandie).

History of .       50 Y white female Para 3003 LMP 4/4/17 here for AUB and Uterine Fibroids

History of ; rest  0-year-old white female para 3003 LMP 4/4/2017 has been referred from Aliceville prison for evaluation of uterine fibroids
and abnormal      ing resulting in anemia. Patient admits to a very long history of uterine fibroids with her last hemoglobin being 6.4.

Health S'
  Pro...
     (
              ...D CT FF68A870-2C00-4C77-8112-D3320B346FF4 / Confirmed
              ..emia / SNOMED CT 145104011 / Confirmed
              rajgic / SNOMED CT 742C916E-A628-4582-9804-4DFF423BB6EF / Confirmed
  All

              Selected)
              cumented
              (No reactions were documented)
              cin (No reactions were documented)
              x (No reactions were documented)
  Med'

              ...ons

              5 mg ), 0 Refill(s), Type: Maintenance
              ..0 mg ), 0 Refill(s), Type: Maintenance

Histor:
  Pas

              :70-2C00-4C77-8112-D3320B346FF4)
              smia (145104011)
              ... c (742C916E-A628-4582-9804-4DFF423BB6EF)
  Proce
     E..         :63829018).
     1           :0).
                 .).
  Fam.
     t
  Soc'
              cms have been recorded.
  Gyn:
  Me
  Cy.
  Flov

Objecti
  Vital !
              CDT           Peripheral Pulse Rate        70 bpm
                            Systolic Blood Pressure      140 mmHg

Printe          , Ted                                          Page 1 of 2
Printe          ./ 8:48 AM CDT                                 (Continued)

| | | |
|---|---|---|
| | Diastolic Blood Pressure | 70 mmHg |
| | Mean Arterial Pressure | 93 mmHg |

Measurements : ... flowsheet : Measurements
5/4/2017 10:54 AM CDT

| | | |
|---|---|---|
| | Height Measured - Standard | 64 in |
| | Weight Measured - Standard | 140 lb |
| | BSA | 1.69 m2 |
| | Body Mass Index | 24.03 kg/m2 |

As :
Physic
Back: :
Abdom    > v          ... rm nontender mass extending up out of the pelvis
Pelvic:          ... x are without lesion and bimanual exam is 18 week size uterus unable to palpate her ovaries minimal tenderness. At
this pe          ... f sampling was discussed and she agreed to SHG endometrial biopsy and the cervix was visualized prepped and a
7.5 St          ... 9 cm and 10 cc of sterile saline put into the uterine cavity and there was obvious distortion within the uterine cavity from
the fibr          ... :iometrial thickness was 0.62 cm an aspiration biopsy was obtained. Patient tolerated procedure well

Plan
Assessment and plan: #1. Abnormal uterine bleeding associated with anemia from 18 week size uterine fibroids. Patient appears to be clinically stable and I have advised ... to proceed with TAH/BSO once that we know her endometrial pathology is benign. If there is malignancy we would refer her to UAB. Extensive and ... ... discussion was given to this patient concerning the risk of her surgery including the risk of bleeding infection anesthesia possible C ... ... ... the high probability of blood transfusion also the possibility of prolonged recovery times and other perils of surgery and she st ... ... ... t and states that she does desire to proceed with surgery once the workup is complete. We will contact the prison with th ... ... its and attempt to arrange the surgery.
Cc Al.

Sign

Signed                     MD on 05/08/2017 08:48 AM CDT

Chart    ... 04, 2017 3:21 PM CDT
Subjec   :N Exam
Perform  < MD, Ted on May 04, 2017 3:22 PM CDT
Electro  : MD, Ted on May 08, 2017 8:48 AM CDT
Visit Ir  93, Winfield Ob/Gyn, Outpatient, 5/4/2017 - 5/6/2017

| Inmate Name: | MO...CA, TERRI MCGUIRE | | | Reg #: | 31860-001 |
| Date of Birth: | 05/14/1966 | Sex: | F   Race: WHITE | Facility: | ALI |
| Encounter Date: | 05/04/2017 14:52 | Provider: | Bailey, Sharon RN | Unit: | A03 |

## Exam:

### Observation
Yes: Within Normal Limits, Normal Rate, Regular Rhythm

### Musculoskeletal
### Gait
Yes: Normal Gait

## ASSESSMENT:

No Significant ...dings/No Apparent Distress

Inmate retur... from offsite gynecologist appointment. Notes sent with inmate state gynecologist will call with biopsy results when available. Inmate NAD, VS WNL, no complaints at this time

## PLAN:

### Disposition:
Follow-up at Sick Call as Needed

### Patient Education Topics:

| Date Initiated...at | Handout/Topic | Provider | Outcome |
| --- | --- | --- | --- |
| 05/04/2017    ...seling | Plan of Care | Bailey, Sharon | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Bailey, Sharon RN on 05/04/2017 14:56
Requested to b... ...d by Griffin, Richard MD/CD.
Cosign documenta... ...ill be displayed on the following page.

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | | Reg #: | 31860-001 |
|---|---|---|---|---|---|---|---|
| Inmate Name: | MOLLICA, TERRI MCGUIRE | | | | | | |
| Date of Birth: | 05/14/1966 | Sex: | F | Race: WHITE | | Facility: | ALI |
| Note Date: | 10/23/2017 15:14 | Provider: | Knopp, E. RN, BSN | | | Unit: | A03 |

Admin Note - Medication Reconciliation encounter performed at Health Services.
**Administrative Notes:**

### ADMINISTRATIVE NOTE 1          **Provider:** Knopp, E. RN, BSN

Inmate requesting renewal of medroxyprogesterone tablets 2.5mg for Iron deficiency anemia, Noninflammatory disorder of uterus, unspecified, Abnormal uterine and vaginal bleeding, unspecified, that expired 10/17/2017.

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Knopp, E. RN, BSN on 10/23/2017 15:17
Requested to be cosigned by Griffin, Richard MD/CD.
Cosign documentation will be displayed on the following page.

# SOUND DIAGNOSITCS OF
# NORTHWEST FLORIDA

**RADIOLOGIST:**
**JOHN C. TOMBERLIN, M.D.**

## ULTRASOUND REPORT

| NAME | MOLLICA, TERRI | ALICEVILLE FCI |
|------|----------------|----------------|
| DR | GRIFFIN, RICHARD | |
| SEX | F | |
| AGE | 05-14-66 | |
| X-RAY | 31860-001 | |
| DATE | 03-13-18 | |

PELVIC ULTRASOUND: THE UTERUS IS PROMINENTLY ENLARGED AND
HETEROGENEOUS APPEARING TO CONTAIN A LARGE FIBROID WITHIN THE
FUNDAL REGION MEASURING NEARLY 13 CM. A SMALL NABOTHIAN CYST IS
PRESENT IN THE CERVICAL REGION. THE ENDOMETRIUM APPEARS TO BE
DISTORTED. THERE IS NO DEFINITE FLUID NOTED IN THE CUL-DE-SAC. THE
RIGHT OVARY CONTAINS A NEARLY 5 CM CYST ALONG WITH ANOTHER
ADDITIONAL 5 CM CYST. THE LEFT OVARY IS UNREMARKABLE. THE URINARY
BLADDER IS SATISFACTORILY DISTENDED WITHOUT WALL THICKENING NOTED.

OPINION:
1. ENLARGED UTERUS APPEARING TO CONTAIN A LARGE FUNDAL FIBROID
   OF APPROXIMATELY 13 CM.
2. RIGHT OVARIAN CYST.

*John C. Tomberlin M.D.*

JCT/JB
D: 03-18-18
T: 03-19-18

# Bureau of Prisons
# Health Services
## Clinical Encounter - Administrative Note

| Inmate Name: | MOLLICA, TERRI MCGUIRE | | | | Reg #: | 31860-001 |
|---|---|---|---|---|---|---|
| Date of Birth: | 05/11/1966 | Sex: | F | Race: WHITE | Facility: | ALI |
| Note Date: | 03/29/2018 16:24 | Provider: | Griffin, Richard MD/CD | | Unit: | A03 |

Review Note - Report Review encounter performed at Health Services.
**Administrative Note::**

    **ADMINISTRATIVE NOTE 1**     **Provider:** Griffin, Richard MD/CD

        51y female with abnormal sonogram:
        13cm fibroid and two 5 cm right ovarian cysts, no cul-de-sac fluid
        needs OB G for evaluation and treatment

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| OB/Gynecology | 05/11/2018 | 05/11/2018 | Urgent | No | |

    **Subtype:**
        Offsite Visit
    **Reason for request:**
        51y female has abnormal uterine bleeding with abnormal sonogram:
        13cm fibroid and two 5 cm right ovarian cysts, no cul-de-sac fluid. sonographically directed EMbx done
        5/4/2017 please see results. pap smear 1/2018 normal. Please evaluate and recommend treatment.

**Copay Required:** No         **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Griffin, Richard MD/CD on 03/29/2018 16:32

# FEDERAL CORRECTIONAL INSTITUTION
## ALICEVILLE, ALABAMA
## INFORMAL RESOLUTION FORM

Inmate Name: Terri McGuire Mollica         Reg. No. 31860-001
Unit: D                                     Date: 10|31|2019

**NOTICE TO INMATE:** You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. State your complaint: Since 2016, I have had severe pain in my lower abdomin, uterus and ovaries. I experience heavy monthly bleeding, am anemic, and regularly have an upset stomach and run fevers.

   **(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. State what actions you have made to informally resolve your complaint: The FCI medical staff diagnosed me with a 10cm fibroid tumor on my uterus and 2-5cm cysts on my right ovary in 2016, but no treatment. On 8/26/2019, I went to sick call and requested that I receive treatment.

3. State what resolution you expect: I would like to see a specialist/surgeon to determine the best course of action, within the next 30 days

Inmate's Signature: Terri McGuire Mollica         Date: 10|31|2019

Correctional Counselor's Comments (Steps to Resolve): Forwarded to Medical via email.

Counselor's Signature: _____         Date: 11/5/19
Unit Manager's Review: _____         Date: 11-12-19
Informally Resolved: _____ WJ         Date: 12-3-19

|  | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 10|30|19 | 11-1-19 | 12-3-19 |  |  |
| TIME | 120 ₁ | 10⁰⁰ ₐ | 12⁰⁰ PM |  | ' |
| COUNSELOR |  |  |  |  |  |

I've reviewed inmate Mollica's complaint and her medical chart. She will be scheduled to see a provider. Please have her watch the call-out for this appointment.

Exhibit B-2

**U.S. DEPARTMENT OF JUSTICE**

**REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Mollica, Terri M. | 31860-001 | D | SPC Aliceville |
|-------|-------------------|-----------|---|----------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

Since 2016, I have had severe pain in my lower abdomen, uterus, and ovaries. I experience heavy monthly bleeding, am anemic, and regularly have an upset stomach and run fevers.

The FCI Aliceville medical staff diagnosed me with a 10cm fibroid tumor on my unterus and two 5cm cysts on my right ovary in 2016. In 5/2017, I went on a medical trip and saw an outside doctor, who confirmed the fibroid and cysts and recommended surgery. In 11/2018, I was scheduled for another outside medical trip, but due to heavy bleeding, the doctor requested that FCI Aliceville reschedule the appointment. So far, I have received no treatment.

On 8/26/2019, I went to sick call at SPC Aliceville and requested that I receive treatment. I was told I would be put on the call-out to see a provider. On 10/30/2019, I completed a form 8.5, and again was told that I would be placed on the call-out to see a provider.

As of this date, I have not received any treatment or additional consults for this problem. I would like to be seen by an outside specialist or surgeon to determine the best course of action, within the next thirty (30) days.

12/04/2019
DATE

Terri M. Mollica
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Exhibit B-3

RECEIPT - ADMINISTRATIVE REMEDY

DATE: DECEMBER 13, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      ALICEVILLE FCI

TO  : TERRI MCGUIRE MOLLICA, 31860-001
      ALICEVILLE FCI     UNT: CAMP D     QTR: D01-010U

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 1000103-F1
DATE RECEIVED  : DECEMBER 12, 2019
RESPONSE DUE   : JANUARY 1, 2020
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      :

✳ Wed 1/29/2020 - Mr Johnson's open house.
Said had to wait on an answer from
"9" before file a "10".

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: ALI-D-D

--------------------------------------------------------------------------------------------------

FROM: AW Operations
TO: 31860001
SUBJECT: RE:***Inmate to Staff Message***
DATE: 02/14/2020 12:17:02 PM

Ms. Mollica, thank you for your patience, your BP-9 is still under review and a response is being generated, you will be receiving a response soon.

>>> ~^!"MOLLICA, ~^!TERRI MCGUIRE" <31860001@inmatemessage.com> 2/13/2020 9:21 AM >>>
To: Mr. Thomas
Inmate Work Assignment: Rec.

Hi Mr. Thomas. I am not sure if you are the proper person to handle this, but I am trying to follow up on my form 9, which was submitted by Counselor Johnson around 12/10/2019. I received a receipt stating that I would have a response by 1/02/2020.

As of today, I have not received a request to extend the time nor an actual response.

I am ready to file my form 10, but Counselor Johnson has told me that I cannot until I have a response from the 9.

Can you please check on that request or, in the alternative, respond to this request with a denial, so that I may proceed?

Thanks for your help.

Exhibit C

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: ALI-D-D

---------------------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: comp rel p 1
DATE: 02/05/2020 05:41:18 PM

TO:     Warden Patricia Bradley

FROM:   Terri McGuire Mollica
        Reg #31860-001

DATE:   February 5, 2020

RE:     Request for Compassionate Release


    Petitioner Terri McGuire Mollica, currently incarcerated at the Satellite Prison Camp in Aliceville, Alabama, requests Compassionate Release pursuant to 18 U.S.C. section 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub L. No. 115-391, section 306, 132 Stat. 5194, 5239. Ms. Mollica is asking that the Warden reduce her currently imposed sentence to time served and recommend that she be released from BOP custody, pending supervised release conditions, in order to obtain needed medical treatment and take advantage of the treatment opportunities afforded me through the Multi-District Level Class Action Lawsuits related to the transabdomenal mesh implants.


I. Background

    Mollica arrived at FCI Aliceville in September 2016, where she was tested and examined by then prison doctor Griffin and found to have a fibroid in her uterus and to be extremely anemic. Griffin recommended a blood transfusion (which was declined), prescribed progesterone to control the bleeding, and iron for 3 months for the iron deficiency.

    On 5/04/2017, some 8 months after arrival at Aliceville, Mollica was taken to see outside gynecologist Dr. Ted Cox told her that the uterine fibroid had grown to 18-week embryo-size uterine fibroid and she was still suffering from anemia. He performed an endometrial biopsy and stated that, pending results of the biopsy, he would refer to a specialist due to the size of the growth and complications from the endometrial mesh implanted in her abdomen and pelvic area.

    **There are no results of the biopsy in Mollica's medical records.

    In October 2017, at a regular consult to obtain prescription refills, Mollica asked about the status of the biopsy and when she could see a specialist related to the tumor and mesh but was told no information was available.

    On 3/13/2018, another ultrasound performed (at the FCI) on Mollica's uterus. The results were the fibroid had grown to 13 cm and that she now had 2 separate 5 cm cysts on her right ovary. Dr. Griffin recommended that Mollica "see an outside specialist."

    In June 2019, a noticeable protrusion on Mollica's upper abdomen, approximately 3 cm from naval on right side, become visible and tender to the touch.

    In August 2019, Mollica requested medical care for the pain and bleeding caused by the fibroid, cysts, and mesh implant.

    October 30, 2109, Mollica filed a form 8.5 requesting an administrative remedy for the lack of access to medical care. She was told that she would "be on the callout."

    November 25, 2019, at an office appointment to obtain prescription refills, Mollica reiterated her concerns regarding the fibroids and bleeding.

    December 4, 2019, Mollica filed a form 9 requesting an administrative remedy for the lack of access to medical care. A response was due on January 1, 2020.

**As of this date, no response has been provided.

On December 16, 2019, another ultrasound was performed at SPC Aliceville, showing the tumor has increased in size.

In January 2020, a noticeable protrusion and possible hernia became visible on Mollica's lower pelvic area, causing pain in that area and pressure on pelvis and bladder.

.

## II. Discussion

Since Ms. Mollica was "held" by the U.S. Marshalls, pending sentencing from May 2015, she has suffered from complications from the mesh implant including anemia, heavy bleeding, pain, and fevers, indicating some sort of infection, as well as complications from the constant state of anemia, including difficulty breathing and burning sensation in lungs.

The problem was immediately diagnosed by prison doctor Griffin in September 2016, but Mollica has never received any treatment other than a prescription of progesterone to try to control the bleeding and a couple or prescriptions for iron. The specialist, Dr. Cox, performed a biopsy, but the medical personnel did not even follow up to see whether the tumor was cancerous. After more than two years of not receiving treatment, Mollica requested medical care in August of 2019, when it became obvious the transabdomenal mesh implanted in her pelvic and abdomen areas was shifting and causing protrusions, pain, and bleeding.

Even after Mollica filed administrative forms 8.5 and a 9 in December, the administration and the medical staff at this facility has not been able to provide any medical treatment.

.

## III. Mesh Implants

In March 2011, Mollica has transabdomenal mesh implanted into her abdomen and pelvic areas. Since her surgery, more than 75,000 persons have entered into multi-district level class action lawsuits because of the complications associated with these mesh implants. The majority of the complaints are pain, bleeding, organ prolapse, urinary and bowel problems.

In June 2011, approximately 4 months after Mollica's surgery, the FDA issued a statement indicating that "serious complication associated with surgical mesh...were 'not rare,' and identifying mesh contraction (shrinkage) as associated with tightening and pain, as a previously unidentified risk (FDA Safety Communication)." Later in 2011, the America College of Obstetricians and Gynecologists (AGOC) and the American Urogynecologic Society (AUGS) issued a Joint Committee Opinion noting "increasing reports" of pain associated with mesh, caused by "contraction, retraction, or shrinkage" (ACOG/AUGS Joint Committee Opinion). It warned that some women would "require surgical intervention" and that pain may be intractable.

By 2012, the United States Judicial Panel on Multi-district Litigation, pursuant 28 U.S.C. section 1407, consolidated and transferred all federal pursuant pursuant pelvic mesh cases pending to the Honorable Joseph R. Goodwin in the United pending to Court for the Southern District of West Virginia. There are currently more than 75,000 affected persons involved in this litigation. See pending litigation:

American Medical Systems Inc. Pelvic Repair (Support) System Product Liability Litigation MDL No. 2325;

Boston Scientific Corporation Pelvic Repair System Product Liability Litigation MDL No. 2326;

C.R. Bard, Inc. Pelvic Repair System Product Liability Litigation MDL No. 2187;

Coloplast Corp. Pelvic Repair System Product Liability Litigation MDL No. 2387;

Cook Medical Inc. Pelvic Repair System Product Liability Litigation MDL No. 2440;

Ethicon, Inc. Pelvic System Product Liability Litigation MDL No. 2327;

Johnson & Johnson Pelvic Support System Product Liability Litigation MDL No. 2327.

------------------------------------------------------------------------------------------------

Mollica's tumor continues to increase and push the mesh through the muscles in the abdomen and pelvis. It is unclear whether the mesh has actually caused the tumor in the uterus.

## VI. Planned Medical Treatment

As soon as she is released from BoP custody, Mollica's family plans to purchase a private insurance policy, through Blue Cross and Blue Shield, at a cost of approximately $415 per month.

There are several facilities that specialize in the removal and/or treatment of injuries caused by the mesh implant, including John Hopkins and University of Colorado. Mollica plans to consult with at least two specialists to determine whether (a) the growth on her uterus is cancerous and the removal thereof; (b) the best course of treatment related to the mesh, including possible removal of the mesh; and (c) the possible removal of her uterus. It is not known whether Mollica will have to have chemotherapy or radiation treatments, however, it is possible that she will have to have some sort of reconstructive surgery to the muscles in her abdomen and pelvic area after the mesh is removed.

During treatment, Mollica plans to temporarily live near the facility providing treatment as the recovery time could be as long as six months. After that, she plans to reside at her family's home in Panama City Beach, Florida.

She currently plans to reopen her home health aide business, as her license is still in good standing with the state of Florida, as soon as she is cleared to return to work.

## IV. Conclusion

Ms. Mollica had not experienced any complications with the mesh nor did she have the fibroid in her uterus prior to 2016. She has been either in U.S. Marshall custody or BoP custody since May 2015. Since February 2016, she has suffered from complications from the mesh implant and the fibroids, including anemia, heavy uterine bleeding, abdominal and pelvic pain, bladder pressure and pain, fevers, breathing difficulty and distress, and infections. Within the last six months, at least two possible hernias have materialized.

The problem was immediately diagnosed by Dr. Griffin upon Mollica's arrive at FCI Aliceville in September 2016, but she has never received any adequate treatment. The staff at FCI Aliceville did not even bother to obtain the results of the endometrial biopsy performed on 5/04/2017 to determine whether she had possible cancer.

Even with all of Mollica's health problems, she has only had one PAP smear during the past three years. Due to the lack of treatment, she will likely have to have her uterus removed, if not have a total hysterectomy.

After more than two years of receiving no medical treatment, Mollica requested treatment since it has become obvious that the mesh implant has shifted and is causing additional protrusions and possible hernias.

Even after filing the administrative remedy forms 8.5 and 9, the staff continues to ignore Mollica's medical problems, which may have become life-threatening, based on the 75,000 lawsuits filed in the seven class action lawsuits.

Mollica requests that the Warden at SPC and FCI Aliceville grant her request to reduce her sentence to time served and allow her to arrange for her own medical care and be able to take advantage of the treatment options available to her as a result of the MDL Class Action Lawsuits, pending in the United States District Court, Fourth District,

Thank you for your consideration.

Respectfully submitted, this the __5th__ day of February 2020.

C

---

Certificate of Service

I, Terri McGuire Mollica, certify under penalty of perjury, that a true and correct copy of this Motion for Compassionate Release, was delivered to the Warden at FCI/SPC Aliceville by placing it in the prison mailbox in Unit D at SPC Aliceville, on this, the _5th_ day of February 2020.

*Terri McGuire Mollica*