FILED
2020 Apr-20  PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| **v.** | ] | **2:14-CR-329-KOB** |
| | ] | |
| **TERRI MCGUIRE MOLLICA,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Ms. Terri Mollica's two motions requesting compassionate release from her prison sentence. (Doc. 94, doc. 95). Ms. Mollica seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, because of a large uterine fibroid caused by transabdominal mesh, (doc. 94), and because of the current COVID-19 pandemic, (doc. 95). She requests that her sentence be reduced to time served.

Upon consideration of Ms. Mollica's motions, the court finds no current entitlement to compassionate release under § 3582(c)(1)(A). Thus, the court finds that it must deny her motions. However, the court notes that Ms. Mollica might have other potential avenues for relief.

## I.    FACTUAL BACKGROUND

On August 9, 2016, the court sentenced Ms. Mollica to a total of 204 months' imprisonment followed by 60 months' supervised release after she pled

1

guilty to 25 counts of fraud-related criminal activity arising from her involvement in an eleven-million-dollar fraud scheme. (Doc. 64; doc. 89 at 82). Prior to her plea agreement, Ms. Mollica faced a total of 82 charges. (Doc. 1). Ms. Mollica received a below-Guidelines sentence, but the court emphasized at her sentencing that Ms. Mollica should face a heavy sentence because she had continued to engage in criminal activity after her arrest and plea agreement. (Doc. 89 at 84). The court also discussed the sentencing factors in 18 U.S.C. § 3553 and mentioned that the fraud was "egregious" and "was not a one-time crime." (*Id.* at 89). The court concluded that the sentence of 204 months' imprisonment reflected the seriousness of the offense, would promote respect for law, and would protect the public from further crimes by Ms. Mollica. (*Id.*)

Ms. Mollica has been serving her sentence at the Federal Correctional Institute in Aliceville, Alabama. Including pretrial detention, Ms. Mollica has been in detention for approximately 60 months.

Ms. Mollica currently suffers from a roughly 15-pound uterine fibroid that she believes developed because of a transabdominal mesh implant. (Doc. 94). Ms. Mollica saw a physician at Aliceville when she first arrived in September 2016; the physician diagnosed Ms. Mollica with an 8 cm uterine fibroid. Eight months later, Ms. Mollica saw an outside gynecologist who confirmed the fibroid diagnosis and performed a biopsy. Ms. Mollica does not know the results of that biopsy and

alleges that FCI failed to obtain the results or, at least, that her medical records do not contain the results.  (Doc. 94 at 3–4).

Ms. Mollica has seen medical providers at Aliceville multiple times and has received abdominal ultrasounds.  Despite recommendations for an outside consultation, the prison has not set up an appointment for Ms. Mollica with another outside physician.  Ms. Mollica has not received any medical or surgical intervention for the mesh or the fibroid.   Now, the fibroid has grown; it causes "visible protrusions" from Ms. Mollica's abdomen and causes her pain, uterine bleeding, anemia, infection, and fevers.

Ms. Mollica states that other recipients of transabdominal mesh implants have pursued class action relief.  She asserts that most complaints involving transabdominal mesh focus on pain, bleeding, prolapse, and urinary and bowel complications.  She goes on to say that "it is unknown how many deaths have resulted from the implants."  (Doc. 94 at 5).

Ms. Mollica states that she has pursued administrative remedies at the prison regarding the treatment of her fibroid, including filing a request for compassionate release with the warden.  The warden did not answer within 30 days.

## II.   STANDARD OF REVIEW

Section 3582, as amended by the First Step Act, states that courts generally cannot alter or modify a term of imprisonment after imposition, but the court can

reduce an inmate's term of imprisonment upon a motion for sentence modification from the Bureau of Prisons or from a prisoner, where the prisoner has exhausted administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  A prisoner can exhaust administrative remedies by (1) pursuing all avenues of appeal of the BOP's failure to bring a motion for modification of sentence, or (2) by filing a request for relief with the warden to which the warden does not respond within 30 days.  *Id.*

Relevant to this case, the court can grant a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A)(i).  In general, the defendant has the burden to show circumstances meeting the test for a reduction of sentence.  *United States v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013); *see also United States v. Heromin*, 2019 U.S. Dist. LEXIS 96520, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (applying this burden of proof after the implementation of the First Step Act).

## III.   DISCUSSION

### a.  First Motion for Compassionate Release

In her first motion requesting compassionate release under § 3582(c)(1)(A)(i), Ms. Mollica asserts that she has a "potentially life-threatening medical situation" because of her transabdominal mesh and uterine fibroid.  (Doc.

4

94).  Ms. Mollica states that she has not received treatment for the fibroid despite multiple requests.  She admits that she has seen medical providers at Aliceville about the fibroid on multiple occasions, but states that she has not had another outside appointment—despite recommendations from the Aliceville medical staff.

Ms. Mollica argues that the Aliceville facility cannot handle her medical needs, so she should be released early.  In support of her argument, Ms. Mollica mentions another prisoner at Aliceville, Angela Beck, who was granted compassionate release by a North Carolina District Court based on her metastatic breast cancer.

Ms. Mollica states that she should be released so that she can pursue private medical treatment.  Ms. Mollica further asserts that many plaintiffs have recovered in a class action suit involving complications from transabdominal mesh and that she should be released so that she can pursue similar relief.

As an initial matter, the court notes that it can properly consider Ms. Mollica's first motion for compassionate release because the warden at Aliceville did not respond to Ms. Mollica's request for compassionate release within 30 days.  So, Ms. Mollica properly exhausted her administrative remedies and can request a modification of her sentence directly from the court.  *See* 18 U.S.C. § 3582(c)(1)(A).  Nevertheless, the court finds that Ms. Mollica has not met her burden of showing that she meets the criteria for compassionate release under

§ 3582(c)(1)(A)(i).  *See Hamilton*, 715 F.3d at 327.

Ms. Mollica argues that she should qualify for compassionate release based on "extraordinary and compelling reasons."  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  However, a reduction on those grounds must also be "consistent with applicable policy statements issued by the Sentencing Commission."  *See id*.  Rather than define "extraordinary and compelling circumstances" itself, Congress instructed the Sentencing Commission to promulgate policy statements regarding § 3582(c)(1)(A), including the "criteria to be applied and a list of specific examples" of extraordinary and compelling reasons for modifying imposed sentences.  28 U.S.C. § 994(a)(2)(C), (t).

The Sentencing Commission guidance states that, provided an inmate is not a danger to the community, she can show extraordinary and compelling reasons for sentence modification because of a medical issue where (1) "The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)"; or, (2) the defendant is suffering from a medical condition that "substantially diminish[es] the ability of the defendant to provide self-care within the environment of the correctional facility" and from which recovery is unlikely.  U.S.S.G. § 1B1.13, application note 1(A).

Under the Sentencing Commission's policy statement, the facts in Ms. Mollica's case do not support a sentence reduction or compassionate release based

solely on her medical condition.  Although Ms. Mollica states that her condition is

"potentially life-threatening," she has not shown that she suffers from a "terminal

illness (i.e., a serious and advanced illness with an end of life trajectory)"; in fact,

she admits that she does not know if or how many people have died from

transabdominal mesh complications.  *See* U.S.S.G. § 1B1.13, application note

1(A).  She provides no evidence that her conditions are terminal beyond her own

vague assertions of the potential threat to her life.  Further, the court cannot just

take Ms. Mollica's word; it needs medical evidence to determine whether her

condition meets the requirement.

Ms. Mollica also has not shown that her condition, though undoubtedly

painful, substantially diminishes her ability to provide self-care within the

environment of the correctional facility.  *See id.*  Her allegations speak of a

condition that is painful, but not debilitating to the extent that she cannot care for

herself.  Once again, she does not show that her medical condition is one from

which recovery is unlikely.  Therefore, Ms. Mollica does not qualify for

compassionate release based solely on her medical condition.

In addition to providing for sentence modification based on a terminal or

debilitating medical issue, the Sentencing Commission's policy statement also

contains a catch-all provision for sentence modification.  Subsection D of the

statement allows a reduction in sentence for "other reasons" where, "*[a]s*

7

*determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the specifically enumerated circumstances meriting a sentence reduction.  U.S.S.G. § 1B1.13, application note 1(D) (emphasis added).

Based on the limited guidance currently available to the court, Ms. Mollica cannot qualify for compassionate release under Subsection D's catch-all provision. Neither the Eleventh Circuit nor the Northern District of Alabama has addressed whether relief under Subsection D's catch-all provision requires a recommendation from the BOP after the implementation of the First Step Act, which for the first time allowed prisoners to bring their own motions under § 3582.  18 U.S.C. § 3582(c)(1)(A).  In fact, it appears that no Circuit Court has addressed the issue at this time.

Meanwhile, the district courts that have addressed the issue of the BOP's role in modifications under Subsection D remain divided regarding the continued effect of Subsection D after the First Step Act.  Some district courts—including the North Carolina court in *United States v. Beck*, a case that Ms. Mollica leans on in her motion—have found that Subsection D of the policy statement, which requires a finding from the BOP of extraordinary circumstances and predates the First Step Act, no longer applies or binds the court; it only offers guidance in the court's exercise of discretion when deciding whether to reduce a sentence.  *United States*

*v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5–9 (M.D.N.C. June 28, 2019); *see also United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).  However, multiple courts across the country have reached the opposite conclusion; those courts have found that the Sentencing Commission's policy statement in Subsection D requiring a finding of extraordinary circumstances *by the BOP* still applies and binds the courts.  *Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 n. 4 (collecting cases).

This court finds that the most compelling guidance comes from close to home.  Multiple district courts within this Circuit that have addressed the issue have found that the policy statement, as written, remains in effect until the Sentencing Commission sees fit to change it; therefore, relief under Subsection D requires a finding from the BOP that the inmate has extraordinary circumstances that merit relief outside of those circumstances specifically enumerated in the policy.  *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 12, 2019), *appeal dismissed,* No. 19-13239-F, 2019 WL 6273393 (11th Cir. Oct. 8, 2019); *United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019).

Specifically, the District Court for the Southern District of Alabama explained that, in 28 U.S.C. § 994, Congress directed the Sentencing Commission

to issue policy statements explaining what circumstances merit sentence reduction. *Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *3. Then, Congress "prohibited courts from granting compassionate release unless 'such a reduction is consistent with applicable policy statements issued by' the Commission." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A), after its amendment by the First Step Act). Therefore, if the policy statement needs to be changed, that responsibility falls to the Sentencing Commission (or, this court might add, Congress), not to the courts. *Id.* at 4. The District Court for the Southern District of Georgia agreed, stating that the "First Step Act *still* requires courts to abide by policy statements issued by the Sentencing Commission." *Willingham*, No. CR 113-010, 2019 WL 6733028, at *2 (citing 18 U.S.C. § 3582(c)(1)(A)) (emphasis in original).

This court finds the reasoning of our sister courts within this Circuit persuasive. The current language of § 3582(c)(1)(A), even after amendment by the First Step Act, states that a sentence reduction must be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Currently, the policy statement includes Subsection D's requirement for a BOP determination of extraordinary circumstances. Until Congress changes the requirement to adhere to the policy statement or the Sentencing Commission changes the policy statement itself, this court agrees with our sister courts and finds that Subsection D requires a finding of extraordinary

circumstances *by the BOP* and continues to bind the court.

The BOP has not determined that Ms. Mollica has extraordinary circumstances that merit a modification of sentence or compassionate release. U.S.S.G. § 1B1.13, application note 1(D).  Therefore, the court finds that Ms. Mollica has not met the threshold for relief under Subsection (D)'s catch-all provision.

Even if the policy statement did not bind the court and modification of her sentence did not require a recommendation from the BOP, this court would not find that Ms. Mollica merits compassionate release for her transabdominal mesh and uterine fibroid at this time.  First, the court finds that her medical condition, while undoubtedly a very painful burden to her, does not require the extraordinary relief that she requests.

Here, comparing Ms. Mollica's case to *Beck*—on which Ms. Mollica relies almost exclusively—provides insight.  The court finds that case highly distinguishable.  In short, Ms. Mollica has not established that her situation is as dire as Ms. Beck's.  The court in *Beck* emphasized the potentially terminal nature of Ms. Beck's metastatic breast cancer, stating that "it is undisputed that breast cancer can be a terminal disease and that Ms. Beck's family history of breast cancer, the delay-induced lack of chemotherapy and radiation therapy, and the delays in other procedures, including biopsies and surgery, place her at an

11

abnormally high risk of recurrence." *Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9. That court went so far as to repeat the point to really drive it home: "As previously discussed, breast cancer is a life-threatening illness even after tumors are removed, and particularly so with a family history of breast cancer, delayed biopsies and surgeries, and a lack of chemotherapy or radiation therapy." *Id.*

In this case, the court does not dispute that Ms. Mollica has a painful medical condition that could likely benefit from better treatment. However, Ms. Mollica has not shown that her condition is imminently life-threatening like Ms. Beck's metastatic breast cancer—a disease with a well-known potential for mortality—or that the lack of timely treatment will likely result in Ms. Mollica's condition becoming fatal. The *Beck* case helps demonstrate that Ms. Mollica's situation is not akin to those in which other courts have granted compassionate release.

Furthermore, § 3582 requires that a court contemplating a sentence reduction consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The court specifically and explicitly considered the § 3553(a) factors when imposing Ms. Mollica's sentence and found that a below-Guidelines 204-month sentence accurately reflected Ms. Mollica's characteristics, the seriousness of her offense, the need to promote respect for the

law, and the need to protect the public from further crimes. *See* (Doc. 89 at 84–90); 18 U.S.C. 3553(a). Ms. Mollica has served *less than a third* of the sentence that the court imposed after consideration of the § 3553(a) factors. A reduction of her sentence to time served would be a drastic measure not merited in this case.

Ms. Mollica does not meet the requirements for extraordinary and compelling circumstances meriting a modification of her sentence, so the court finds that she is not entitled to compassionate release under § 3582(c)(1)(A). Accordingly, the court denies Ms. Mollica's first motion for compassionate release.

### b. Second Motion for Release

In her second motion, entitled "Emergency Motion for Expedited Relief for Reduction in Sentence and Immediate Release," Ms. Mollica requests immediate release from custody under § 3582 because of the "emergency situation" at the Aliceville prison caused by COVID-19. (Doc. 95). She argues that this situation constitutes "an extraordinary and compelling" reason for her release.

Ms. Mollica mentions the rates of infection in Alabama and Mississippi without mentioning any cases at the Aliceville prison but argues that the Aliceville facility lacks the means to keep her free from harm. She asserts that social distancing, as recommended by the CDC, is impossible in the facility. She also refers to her medical issues mentioned in her original motion for compassionate

release.  Ms. Mollica does not mention pursuing any administrative relief or requesting compassionate release from the warden.

For a prisoner to file a motion for compassionate release under § 3582, the prisoner must first exhaust administrative remedies by seeking relief from the warden and having such relief either declined or ignored.  18 U.S.C. § 3582(c)(1)(A).  While Ms. Mollica properly pursued administrative relief before she filed her first motion for compassionate release based on her transabdominal mesh and fibroid, she has provided no indication that she exhausted her administrative remedies regarding her complaint about COVID-19.  Therefore, she cannot properly bring her motion to this court.  *See id.; see also United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (denying a motion for compassionate release based on the COVID-19 pandemic because the inmate had not complied with the statute and exhausted administrative remedies).

Even if the court somehow considered Ms. Mollica's second motion, (doc. 95), as an amendment to her first motion, (doc. 94), it would still fail.  Ms. Mollica has not shown that the Aliceville prison has an ongoing COVID-19 outbreak or is at particular risk for an outbreak.  She also has not shown that she is at more risk from the disease than the other inmates at Aliceville.  Moreover, as discussed above, the § 3553(a) factors do not weigh in favor of her release at this time.  *See supra* at 12–13.  In sum, Ms. Mollica has not shown any compelling reason that

14

she merits early release more than other inmates.  Therefore, the court denies Ms.

Mollica's second motion for compassionate release.

## IV.   CONCLUSION

Because of the specific facts of this case and the applicable law under

§ 3582(c)(1)(A), the court finds that it must deny Ms. Mollica's motions for

compassionate release.  However, the court does not lack sympathy for Ms.

Mollica's situation, characterized by a painful and currently untreated medical

condition and reasonable fear of a global pandemic.  So, the court finds it

appropriate to note that Ms. Mollica might not be totally without recourse.

Ms. Mollica mentions at one point in her motion regarding her fibroid that

she believes her lack of treatment violates her rights under the Eighth Amendment.

(Doc. 94 at 4).  In light of that assertion, Ms. Mollica may want to consider looking

into filing a suit alleging deliberate indifference to a serious medical need under 42

U.S.C. § 1983.  That kind of suit could potentially provide Ms. Mollica with a

more appropriate avenue for treatment than her motions under § 3582.

Finally, the court notes that Attorney General William Barr has recently

released guidance encouraging some prisons most affected by COVID-19 to

consider home confinement for qualifying prisoners.  *See* April 3, 2020

Memorandum from the Attorney General to the Director of the BOP,

https://content.govdelivery.com/attachments/USFEDCOURTS/2020/04/05/file_att

achments/1419609/BOP.pdf.  While Ms. Mollica's institution is not covered by

that order, she might take reassurance from the fact that the government and the

BOP are taking measures to address the spread of COVID-19 in federal prisons.

In accordance with the above, the court DENIES Ms. Mollica's motions for

compassionate release, but encourages her to investigate other avenues to obtain

treatment.

**DONE** and **ORDERED** this 20th day of April, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE