FILED

2022 Nov-09  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| **v.** | ] | **2:14-CR-329-KOB** |
| | ] | |
| **TERRI MCGUIRE MOLLICA,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

This matter comes before the court on Terri Mollica's "Emergency Motion for Compassionate Release or Sentence Reduction Pursuant to the First Step Act of 2018 and Title 18 U.S.C. Section 3582(c)(1)A) and Motion to Appoint Counsel" filed on September 12, 2022 (doc. 121); her two addenda filed on September 30 and October 17, 2022 (docs. 126 & 128); the Government's response in opposition (doc. 125); and Ms. Mollica's reply (doc. 127). The court previously denied Ms. Mollica's two requests for compassionate release in 2020. (Docs. 100 & 101). In her current motion, Ms. Mollica now requests compassionate release yet a third time and also attacks her sentence.

For the following reasons, the court will again DENY Ms. Mollica's motion for compassionate release WITHOUT PREJUDICE and DISMISS WITHOUT PREJUDICE her claims attacking her sentence for lack of jurisdiction.

### *Background*

Pursuant to a written plea agreement, Ms. Mollica pled guilty to twenty-five criminal counts for her involvement in an eleven-million-dollar fraud scheme.  In exchange for her guilty plea, the Government agreed to dismiss the remaining fifty-seven counts to which she pled not guilty. (Docs. 1 & 25).

Around the time of her plea of guilty in this case, Ms. Mollica engaged in a bizarre criminal scheme in which she targeted persons involved in investigating and prosecuting this case.  For her participation in that criminal scheme, on July 23, 2015, Ms. Mollica pled guilty to the "knowing or intentional use of a communication facility to distribute controlled substances" before Judge Hopkins in 2:15-cr-224-KOB-GMB in the Northern District of Alabama.  On October 15, 2015, Judge Hopkins sentenced Ms. Mollica to 28 months' imprisonment, 14 months to run concurrently and 14 months to run consecutively to this court's ultimate sentence in the original case.  (Docs. 1, 2, & 15 in 2:15-cr-224-KOB-GMB).

Then, on August 9, 2017, the court sentenced Ms. Mollica in this case to a total of 204 months' imprisonment followed by 60 months' supervised release. (Doc. 64; doc. 89 at 82).  She did not appeal her conviction or sentence in this case.

The Federal Board of Prisons website indicates that Ms. Mollica is currently housed at FCI Marianna with a projected release date of November 1, 2030.

### *Motion for Compassionate Release*

Ms. Mollica's current filing is her *third* motion for compassionate release. The court denied Ms. Mollica's prior two motions for compassionate release on April 20, 2020 (docs. 94, 95, 100, & 101) and denied her motion for reconsideration on May 29, 2020 (docs. 105, 109, & 110).  Ms. Mollica appealed, but the Eleventh Circuit dismissed her appeal because she failed to pay the required appeal and docketing fees.  (Doc. 120).

Ms. Mollica now seeks compassionate release because of her uterine fibroid tumor, family history of colon cancer, colon/rectal issues, hernia, uterine/vaginal prolapse, hypertension, asthma, hyperlipidemia, anemia, depression, anxiety, migraine headaches, and post-traumatic stress disorder.  She claims that these serious medical conditions substantially dimmish her ability to provide self-care within the prison setting; that the COVID-19 pandemic "hinders her ability to provide self-care in the prison environment due to the lack of social distancing, proper cleaning supplies, hygiene, masks, etc."; that the Federal Board of Prisons has failed to provide her with adequate food and medical care; and that her living conditions in the prison "make it impossible to provide self-care."  (Doc. 121 at 1-5 & Doc. 127 at 3, 11).

She requests that the court reduce her sentence to time served[1] or, in the alternative, change her "method of incarceration" from custody to home detention so she can "provide herself with proper medical care."  (Doc. 127 at 9, 13).

As an initial matter, the court cannot reduce her custodial sentence to a term of home confinement.  The Federal Board of Prisons has the absolute discretion to designate an inmate's place of confinement, including placement in home confinement.  *See* 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.").  So, this court has no authority to compel that the BOP place Ms. Mollica on home confinement.

To the extent that Ms. Mollica asks the court to reduce her sentence to time served, she has not shown that she is entitled to a sentence reduction under 18 U.S.C. § 3582, as amended by the First Step Act.  Under that statute, courts generally cannot alter or modify a term of imprisonment after imposition. But the court has authority to reduce an inmate's term of imprisonment under *limited* circumstances upon a motion for sentence modification from the Bureau of Prisons or from a prisoner where the prisoner has exhausted administrative remedies.  18

---

[1] Interestingly, Ms. Mollica asks the court to reduce her sentence for counts that the Government dismissed pursuant to her plea agreement. She also asks the court to "resentence" her "within the guideline range of 34-46 months" for Counts "78-82." *See* (Doc. 127 at 13).  The Government dismissed Count 82 so the court assumes Ms. Mollica does not want the court to resentence her on that dismissed count.  And the court sentenced her to 18 months on Counts 78, 79, 80 and 81 to run separately and concurrently, well below the guideline range requested by Ms. Mollica.  So, the court assumes that Ms. Mollica wants the court to reduce her sentence to time served on all counts to which she pled guilty.

U.S.C. § 3582(c)(1)(A).

To exhaust her administrative remedies as required by § 3582, a prisoner must file a request for compassionate relief with the BOP; the prisoner must then either pursue the entire appeals process for that request or wait 30 days.  *Id.*  Here, Ms. Mollica has exhausted her administrative remedies.  Since this court's denial of her first two motions for compassionate release, Ms. Mollica has submitted two additional requests to the Warden for compassionate release dated January 11, 2022 and March 22, 2022.  (Docs. 125-3 & 125-4).  The Warden denied both requests, stating that Ms. Mollica's medical conditions did not substantially limit her ability to provide self-care in a prison setting.  (Docs. 125-1 & 125-2).

Even though Ms. Mollica has exhausted her administrative remedies, she still fails to meet the criteria for a reduction in her sentence based on compassionate release. As amended by the First Step Act, § 3582(c) allows a court to modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" *if* the court finds that "extraordinary and compelling reasons warrant such a reduction" *and* that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  In general, the defendant has the burden to show circumstances meeting the test for a reduction of sentence.  *United States v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013); *see also United States v.*

5

*Heromin*, 2019 U.S. Dist. LEXIS 96520, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (applying this burden of proof after the implementation of the First Step Act).

The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons" warranting a reduction in sentence. U.S.S.G. § 1B1.13(1)(A) & cmt.  The Eleventh Circuit recently held that U.S.S.G. § 1B1.13 is an "applicable policy statement" for motions filed by a defendant after the First Step Act, and that the court may *not* reduce a sentence under § 3582(c)(1)(A) *unless* such a reduction is consistent with that guideline.  *United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021), *cert. denied*, 2021 WL 5763101 (U.S. Dec. 6, 2021).

The Sentencing Commission guidance states that, provided an inmate is not a danger to the community, she can show extraordinary and compelling reasons for sentence modification because of a medical issue where (1) "the defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)"; or, (2) the defendant is suffering from a medical condition that "substantially diminish[es] the ability of the defendant to provide self-care within the environment of the correctional facility" and from which recovery is unlikely. U.S.S.G. § 1B1.13, application note 1(A).  Under the Sentencing Commission's policy statement, the facts in Ms. Mollica's case do not support a sentence

reduction or compassionate release based on her medical conditions.

Although Ms. Mollica states that her medical conditions have deteriorated "mainly from a lack of medical care," the court can find no support in her medical record to show that she has a terminal illness. She admits that she has no colon cancer diagnosis, much less a terminal one, at this point. *See* (Doc. 127 at 2).

The extraordinary and compelling reason under § 1B1.13 that *could possibly* apply to Ms. Mollica includes the reason that she is "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13, application note 1(A). But Ms. Mollica has failed to show that her medical conditions meet this applicable policy statement.

The court has examined over 500 pages of Ms. Mollica's medical records that the Government submitted with its response and finds no support for Ms. Mollica's claim that her medical conditions "*substantially* diminish her ability to provide self-care within the environment of a correctional facility." *See* (Docs. 125-1 through 125-11). The court focused its attention on the medical records dated after the court's 2020 denial of her first motions for compassionate release. Those medical records show that, on July 9, 2020, Ms. Mollica presented with a large fundal fibroid that an endometrial biopsy showed was "negative for

intraepithelial lesion or malignancy." (Doc. 125-10 at 39-51). Ms. Mollica claims that the Government failed to submit a complete copy of the medical records from this July 2020 consultation with Dr. Lorissa Autery that showed a "mass in the colon area." (Doc. 127 at 3). But Ms. Mollica failed to submit any additional pages from her medical record for this visit for this court to review.

 By July 2021, her hypertension, anxiety, and migraines were well-controlled with medications; she was doing well on her Albuterol inhaler; but she was positive for blood in her stool and doctors ordered a colonoscopy. (Docs. 125-11 at 24-27). In October 2021, Ms. Mollica was referred to general surgery for a colonoscopy that was deemed "medically necessary but non-emergency." (Doc. 125-5 at 50-60). But, based on her medical records from July 22, 2022, she had not yet undergone that colonoscopy as of that date. (Doc. 125-5 at 3-4).

In December 2021, Ms. Mollica reported that she could attend to all of her activities of daily living, was tolerating a normal diet and was cleared for "food services with no restrictions," and reported no blood in her stool during that visit. (Doc. 125-5 at 35). And her mammogram and pap smear were both normal in February 2022. (Doc. 125-5 at 17, 102).

In March 2022, Ms. Mollica complained of blood in her stool, but reported no pain. In her motion, she claims that she has been "unable to eat all or part of her lunch or dinner since March 2022" because of her fibroid and colon medical

issues, and that the BOP has refused to provide her with a special diet. (Doc. 121 at 7). In April 2022, she reported pain at a level of two out of ten, but reported no pain at her June and July 2022 visits.

On July 22, 2022, she reported abdominal vaginal bleeding and diarrhea with bloody mucus four to five times per week and a left groin hernia. The doctor ordered an ultrasound of her left groin, and the record from the July 2022 visit indicated that her colonoscopy was still "pending." (Doc. 125-5 at 3-18). And Ms. Mollica claims in her motion that Dr. Byrd, a BOP psychiatrist, diagnosed her with PTSD on July 26, 2022, as a result of all the COVID-19 lockdowns the prior two years, but the court can find no medical records of that diagnosis. (Doc. 121 at 9).

A recent August 16, 2022 ultrasound shows a "possible inguinal hernia" in the left groin area and "none-specific left groin lymph nodes" measuring "2.3 x 1 x 1.7 cm and 2.7 x 0.6 x 1.2 cm," which Ms. Mollica argues is an "indicator" of her undiagnosed colon cancer. (Doc. 126 at 3-4).

Although the court has only discussed some aspects of her medical records, the court acknowledges that Ms. Mollica has medical conditions for which she needs diagnoses and treatment. But the court can find no support in any of her medical records to show that those medical conditions *substantially* limit her ability to care for herself within the prison setting.

Ms. Mollica argues that she that she cannot provide self-care because she is

unable to use the prison's laundry and hygiene products because her Sulfa allergy to these products causes a "skin condition" and rash; she has not eaten the breakfast cereal for over six months because of her allergy; and the BOP has failed to approve a special diet even though she claims that she cannot digest certain foods, including beans and rice, because her fibroid puts pressure on her stomach and colon.  She also argues that the prison does not give her adequate access to feminine hygiene products.  (Doc. 121 at 21 & Doc. 121-1 at 20).

But these alleged failures on the BOP's part do not show that her medical conditions substantially limit *her* ability to care for herself in the prison setting. The BOP's alleged failure to provide adequate medical care, sulfa free products, hygiene products, or certain types of food does not mean that Ms. Mollica cannot physically or mentally care for herself within the prison setting.  She can bathe herself, feed herself, and do her activities of daily living.  *See* (Doc. 125-5 at 35) (Ms. Mollica reported that she could attend to all of her activities of daily living). Her claim is not that she cannot physically or mentally care for herself, but that the BOP has failed to provide adequate medical care and medical accommodations for her during her imprisonment.

As the court explained in its previous Order denying compassionate release, Ms. Mollica's first two motions for compassionate release seemed rooted in her claim that the BOP has failed to provide necessary medical treatment.  *See* (Doc.

100 at 15). And now she again argues that her health has deteriorated "mainly from lack of medical care" and that the BOP has shown "deliberate indifference to her medical needs." (Doc. 121 at 18). And she adds in her current motion that the BOP has failed to provide her with proper sulfa-free products, proper food, and necessary hygiene products to accommodate her allergy and medical conditions. The court previously informed Ms. Mollica that these types of claims are more appropriate in a civil suit alleging deliberate indifference to a serious medical need in violation of the Eighth Amendment and not in a motion for compassionate release in her criminal case. *See* (Doc. 100 at 15)[2]. But, to the court and Government's knowledge, Ms. Mollica has failed to file a civil suit based on these claims. *See* (Doc. 125 at 4).

And Ms. Mollica's concerns about COVID-19 do not constitute an extraordinary reason to grant her a compassionate release. The threat of the COVID-19 pandemic is less today than when the court denied Ms. Mollica's first two motions for compassionate release in 2020 at the height of the pandemic. And although she claims she refused the COVID-19 vaccine because she is allergic to

---

[2] In its previous Order, the court mistakenly stated that such a civil case could be filed under 42 U.S.C. § 1983, which only applies to constitutional claims against state actors. Because Ms. Mollica is a federal prisoner in a federal correctional facility, she could not assert civil constitutional claims against federal officials under § 1983. Instead, she could file a civil rights complaint under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging violations of her Eighth Amendment rights. However, this court has no opinion on whether such a civil suit would have any merit.

11

the polyethylene glycol contained in it, the Government argues that the J&J/Janssen COVID-19 vaccine that Ms. Mollica refused does not contain polyethylene glycol.  *See* (Doc. 125 at 14 & Doc. 125-5 at 81) (citing https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect.html).  Regardless, the court finds that the threat of the pandemic to Ms. Mollica at this point does not present any extraordinary reason to reduce Ms. Mollica's sentence today.

The Sentencing Commission's policy statement also contains a catch-all provision that states: "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with*" the specifically enumerated circumstances meriting a sentence reduction.  *Id.* § 1B1.13 cmt. 1(D).  But the Eleventh Circuit held in *Bryant* that this court does *not* have discretion to develop any "other reasons" that might justify a reduction in a defendant's sentence under that catch-all provision; only the Director of the Bureau of Prisons can make that determination.  *Bryant*, 996 F.3d at 1248.

So, the court must evaluate Ms. Mollica's compassionate release motion under the Sentencing Commission's policy statements as discussed above to determine if any extraordinary and compelling reasons exits to grant her compassionate release.  Contrary to Ms. Mollica's argument, the court cannot consider Ms. Mollica's  "other reasons" for a compassionate release, including her

alleged harsh sentence, disparities in her sentence to other offenders, sentencing errors, and harsh prison conditions described in her motion.  Pursuant to the Eleventh Circuit's decision in *Bryant*, the court must adhere to the grounds set out in the Sentencing Guideline's policy statements.

Ms. Mollica cites the recent Supreme Court decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022) as authority for this court to consider intervening changes in law or fact in making its compassionate release determination. (Doc. 127 at 1).  First, Ms. Mollica cites to no intervening change in law that would have affected her sentence.  And regarding her alleged changes in fact, Ms. Mollica's assessment of *Concepcion* is flawed.

The Court in *Concepcion* held the "First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence under the First Step Act." *Concepcion*, 142 S. Ct. at 2404.  But the Court in *Concepcion* also acknowledged that Congress statutorily could limit the district court's discretion to consider relevant materials in deciding whether a reduction in sentence is warranted.  In fact, the Court in *Concepcion* specifically noted that, for *compassionate release motions under the First Step Act*, Congress "expressly cabin[ed] district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements." *Concepcion*, 142 S. Ct. at 2394 (citing § 3582(c)(1)(A)).  So, the Supreme Court's decision in *Concepcion* does

nothing to undermine the Eleventh Circuit's holding in *Bryant* that this court is bound by the policy statements of the Sentencing Commission in § 1B1.13 in determining whether extraordinary and compelling reasons exist to grant Ms. Mollica compassionate release.

Ms. Mollica also cites a *Third Circuit* opinion to support her argument that this court can consider any alleged sentencing errors as extraordinary and compelling reasons to grant her compassionate release. *See* (Doc. 127 at 6–7) (citing *United States v. Trenkler*, 47 F.4th 42 (3d Cir. 2022). But she is wrong.

The Third Circuit in *Trenkler* held that the existing Sentencing Commission's policy statements do *not* apply to prisoner-initiated motions for compassionate release. So, in the Third Circuit, district courts are not bound by those policy statements and may consider virtually any reason in determining whether extraordinary and compelling reasons exist for granting compassionate release. *Trenkler*, 47 F.4th at 47–48. But *Trenkler* is not binding on this court.

Instead, this court is bound by *Eleventh Circuit* and Supreme Court precedent, not a *Third Circuit* decision. And the Eleventh Circuit's holding in *Bryant* directly contradicts the Third Circuit's ruling in *Trenkler*. The Eleventh Circuit in *Bryant* held that U.S.S.G. § 1B1.13 is an "applicable policy statement" for motions filed by a defendant after the First Step Act, and this court may *not* reduce a sentence under § 3582(c)(1)(A) *unless* such a reduction is consistent with

14

that guideline.  *See Bryant*, 996 F.3d at 1247-48, *cert. denied*, 2021 WL 5763101 (U.S. Dec. 6, 2021).  Moreover, under *Bryant*, this court has no authority to develop any "other reasons" for determining whether any extraordinary or compelling reasons exists to grant compassionate release; only the BOP has that authority.  *Id.*

To the court's knowledge, the BOP has not determined that Ms. Mollica has extraordinary circumstances that merit a modification of sentence or compassionate release under U.S.S.G. § 1B1.13, application note 1(D).  Therefore, the court finds that Ms. Mollica has not met the threshold for relief under Subsection (D)'s catch-all provision.

Furthermore, even if Ms. Mollica could somehow show an extraordinary and compelling reason to warrant compassionate release, the factors in § 3553(a) weigh heavily against granting such relief.  The First Step Act requires that a court contemplating a compassionate release consider "the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  The court specifically and explicitly considered the § 3553(a) factors when imposing Ms. Mollica's sentence and found that a below-Guidelines 204-month sentence accurately reflected Ms. Mollica's characteristics, the seriousness of her offense, the need to promote respect for the law, and the need to protect the public from further crimes.  *See* (Doc. 89 at 84–90); 18 U.S.C. 3553(a).  The court emphasized

15

at her sentencing that Ms. Mollica should face a heavy sentence because she had continued to engage in criminal activity after her arrest and plea agreement. (Doc. 89 at 84). The court also discussed the sentencing factors in 18 U.S.C. § 3553 and mentioned that the fraud she committed was "egregious" and "was not a one-time crime." (*Id.* at 89). The court concluded that the sentence of 204 months' imprisonment reflected the seriousness of the offense, would promote respect for law, and would protect the public from further crimes by Ms. Mollica. (*Id.*) Ms. Mollica has presented no evidence for the court to alter its consideration of the 3553(a) factors at this time.

Ms. Mollica has served about half of the sentence that the court imposed after consideration of the § 3553(a) factors. A reduction of her sentence to time served would be a drastic measure not merited in this case, even considering all of her rehabilitation efforts, educational training, and good behavior while in prison.

Ms. Mollica does not meet the requirements for extraordinary and compelling circumstances meriting a modification of her sentence, so the court finds that she is not entitled to compassionate release under § 3582(c)(1)(A).

And she has failed to show exceptional circumstances justifying appointment of counsel in this case. Ms. Mollica has no constitutional or statutory right to counsel for a motion for compassionate release, and the court finds that the legal issues in this case are not so complex as to warrant appointment of counsel in

this case.  *See United States v. Courson*, 835 F. App'x 546, 547 (11th Cir. 2021)

(finding that a prisoner has no constitutional or statutory right to counsel for a

motion for compassionate release and appointment of counsel is not warranted

where issues are not complex).  Ms. Mollica has also failed to show that a hearing

on this matter is warranted.  *See United States v. Denson*, 963 F.3d 1080, 1086-87

(11th Cir. 2020) (concluding that a district court is not required to hold a hearing

before ruling on a motion for a reduced sentence made pursuant to 18 U.S.C. §

3582(c)(1)(B)).

Accordingly, the court will deny Ms. Mollica's motion for compassionate

release without prejudice, deny her motion for counsel, and deny her motion for

hearing in this matter.

### Claims Attacking her Sentence

In addition to arguing grounds for compassionate release, Ms. Mollica also

seems to attack her alleged "harsh sentence," "disparity in sentencing," and

sentencing errors allegedly committed by the court.  *See* (Doc. 121 at 13-17).

Although Ms. Mollica titled her motion as one for compassionate release, she

claims that the court committed several errors in calculating her initial sentence.

As an initial matter, a court must liberally construe a *pro se* litigant's filing.

*See Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  This liberal construction

requirement for *pro se* litigants carries great weight when courts consider habeas

filings, given that "the writ of habeas corpus plays a vital role in protecting

constitutional rights." *Id.*  The court must "look beyond the label of a pro se

inmate's motion to determine if it is cognizable under a different statutory

framework." *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003).

So, the court normally should consider those habeas claims under 28 U.S.C. §

2255.

      But, in this case, Ms. Mollica's attack on her sentence would be a "second or

successive" § 2255 motion to vacate her sentence because the court denied her first

§ 2255 motion on the merits on March 21, 2019 and denied a certificate of

appealability. (Docs. 16, 17, & 28 in 2:17-cv-8038-KOB).  Ms. Mollica filed a

notice of appeal of that denial on May 6, 2019, but the Eleventh Circuit denied a

certificate of appealability because reasonable jurists would not debate the district

court's denial of her § 2255 motion.  (Docs. 18 & 35 in 2:17-cv-8038-KOB).

      This court has no jurisdiction to decide a successive habeas motion without

Ms. Mollica first obtaining certification from the Eleventh Circuit as required by

28 U.S.C. § 2255(h).  Absent such certification, this court must dismiss the motion

without prejudice for lack of jurisdiction.  *See Dorch v. United States*, 799 F.

App'x 811, 812-13 (11th Cir. 2020) ("Without such authorization [from the

Eleventh Circuit], 'the district court lacks jurisdiction to consider a second or

successive petition.'") (quoting *Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003)).

Accordingly, to the extent that Ms. Mollica attacks her sentence and the court construes those claims as ones under 28 U.S.C. § 2255, the court will dismiss those habeas claims without prejudice to refiling in the event she obtains the certification of the Court of Appeals required by § 2255(h).

### *Conclusion*

This court is sympathetic to Ms. Mollica's medical conditions. And the court has considered all of her arguments for compassionate release. But for the reasons stated above, the court will deny her motion for compassionate release without prejudice. And the court finds no basis on which to appoint counsel or conduct a hearing in this matter and denies those requests.

And, to the extent that Ms. Mollica's motion attacks her sentence, the court will dismiss those habeas claims without prejudice for lack of jurisdiction.

The court will enter a separate Order in this case.

**DONE** and **ORDERED** this 9th day of November, 2022.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE